No. 10,719.

OLSON, ET AL. *v.* MODEL LAND & IRRIGATION CO., ET AL.

Decided April 7, 1924.

Action to determine rights of claimants to a specific fund involved in the construction of a reservoir. Judgment for defendants.

*Reversed.*

1.  MECHANICS' LIENS—*Pleading.* Under the provisions of chapter 163, S. L. '11, concerning rights of persons furnishing supplies to contractors, it is held in an action by a contractor to determine the ownership of funds in the hands of the owner, it is only necessary for a claimant to state his right or interest in the fund.

2.    *Claim—Demurrer.* The fact that a lien claimant includes
      in his statement items which could not have been used in con-
      nection with the construction work, will not render his claim
      subject to demurrer, it being good as to other items.

3.    *Boarding House—Supplies.* Groceries and supplies furnished
      a subcontractor who also conducts a boarding house which is
      necessary for his men, held a proper charge under the pro-
      visions of section 2, chapter 163, S. L. '11; but a lien will not
      lie for such provisions as are consumed by men not employed
      on the contract work.

4.    *Claimant—Burden.* It is the duty of a lien claimant to show
      what proportion of supplies furnished a subcontractor, are used
      on the contract work. There being no evidence on this point in
      the instant case, the judgment is reversed.

*Error to the District Court of Las Animas County, Hon.
A. F. Hollenbeck, Judge.*

Messrs. HAWLEY & ERICKSON, Mr. FRENCH L. TAYLOR,
for plaintiffs in error.

Messrs. HUNTER, BELL & McKISSACK, for defendants
in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

JUDGMENT was rendered against William Olson and A.
W. Olson, partners, in an action which they brought
against F. E. Dunlavy and others to settle the rights in
a certain fund in the hands of one of the defendants, The
Model Land and Irrigation Company, in which fund Dun-
lavy claimed an interest under S. L. 1911, Ch. 163, C. L.
§§ 6481-6483. The Olsons bring error.

The pertinent parts of the act in question are as fol-
lows: "Section 2. Every * * * person * * *
furnishing * * * provisions, goods or supplies to any
contractor or subcontractor, in the construction of any
* * * reservoir * * * or any part thereof, used
by such contractor or subcontractor in carrying on said
work of construction whose demand for * * * goods

or supplies so furnished has not been paid, may deliver to the company owning such * * * reservoir * * * a verified account of the amount and value of the * * * goods or supplies so furnished, and thereupon such company * * * shall retain out of the subsequent payments to the contractor * * * the amount of such unpaid account for the benefit of the person to whom the same is due."

Section 3 provides that when the verified account shall be given to the reservoir owner, he shall give the contractor a copy of it, and if the latter does not within ten days notify him that it is disputed, the contractor shall be deemed to have assented to its payment. The creditor may have an action at law for the debt against the owner to the extent of the amount due from him to the contractor.

The essential facts are as follows. The Model Company employed the Olsons to repair a reservoir dam, and they employed one Williams to haul rock with which to do the work. Williams ran a boarding house for his men at which he entertained some other boarders. The board bills of his men were deducted from their pay. For this boarding house and for other purposes he bought on credit goods of various kinds of Dunlavy, who kept a general store not far away. Williams left $674.95 of his bill unpaid. The Olsons had paid him in full and more. When they finished their work there was due them from the Model Company $772.71 which that company refused to pay because Dunlavy claimed a part of it under said sections. They then brought this action to settle the rights of the claimants to the fund. The Model Company tendered the fund into court and Dunlavy answered separately, setting up his claim. It appears in the pleadings, undenied, that the notice required by the statute had been duly given, and the Model Company had disputed Dunlavy's claim to the fund. Evidence was offered below to show that one David Olson, a minor son of William Olson, was an agent of the partnership and that by him the firm had requested the credit and has promised to pay the

Williams debt to Dunlavy, but in this court the attorneys for the defendants in error abandon all claims except their rights under the statute.

The district court found the facts substantially as we have stated them, ordered the Model Company to pay the fund into court, rendered judgment for Dunlavy against the plaintiffs for $538.15 and ordered it and the costs paid out of the fund.

The real question for us is, of course, whether under the above mentioned statute Dunlavy had a right to the fund, and, if he had, whether to the amount the court gave him.

The plaintiffs in error claim that the answer of Dunlavy does not state a defense. In this sort of a case there is need only to state his right to or interest in the fund. It appears from the complaint that the company owed the contractor and the answer states that Dunlavy gave the company a verified account of his claim for goods sold to the subcontractor and used in the construction of the reservoir. This, of course, would be enough, but the Olsons claim that the itemized account, which is made a part of the answer, contains items which could not have been used in the construction of the reservoir. That is true, yet it contains some that could, so there was a valid claim shown, the objection goes only to the amount thereof and will not sustain a demurrer. *Barnes v. Colo. Springs etc., Ry. Co.*, 42 Colo. 461, 469, 94 Pac. 570.

We first consider the question whether the groceries, etc., for the maintenance of the boarding house for the men is a proper charge under section 2. We think it sufficiently clear, from the expression in that section, "provisions, goods or supplies" furnished to any subcontractor, that if he necessarily carries on a boarding house for his men and furnishes them board as a part of their pay, the merchant who sells his goods for that purpose may take advantage of the statute in question. In this case, under the evidence, the boarding house may reasonably be said to be a necessity and the board bills of Wil-

liams' men were deducted from their pay. This, if not exactly the same thing as making the board a part of their pay, was practically equivalent to it, so we answer this question in the affirmative.

But some of the employees of the Model Company boarded at Williams' boarding house and other persons occasionally ate there and were charged for ·their board or meals. With these employees and other persons the contractors had nothing to do. If these men were working on the reservoir at all (which does not appear), they were not working on the contractors' job, and we do not think that the Olsons or any fund which they have earned can be held liable for such portion of the supplies furnished the boarding house as was consumed by them. Many items of the bill cannot, in any event, be said to have been used on the construction work. The court seems to have disallowed these items: whether it did or not we do not know, but we must assume that it did, since the evidence upon which this could be done is present (*Barnes v. Colo. Springs, etc., Co., supra*), and such action would approximate the judgment; but it was the duty of the claimant to show what part, or at least what proportion, of his bill was actually used on the work, and, since there was no evidence on this point, the court could not have disallowed the price of that not so used, because it did not know the amount of it. The consequence is that the judgment must be reversed and a new trial granted.

Reversed and remanded.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE WHITFORD concur.